**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Criminal Action |
| ) | No. 04-05033-03-CR-SW-ODS |
| VICTOR M. GOMEZ-CORNADO, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Defendant filed a Motion to Suppress Evidence, in which he asserts that evidence seized as a result of a search of his vehicle on January 30, 2004, should be suppressed. The United States filed its response. The matter was set for an evidentiary hearing, which was held before the undersigned on March 30, 2005. The defendant was present with counsel, Shane Cantin, and the United States was represented by Robyn McKee, Assistant United States Attorney.

The government called Trooper Toby Schaef of the Texas Department of Public Safety. On January 30, 2004, he was working as a trooper with the Highway Patrol. He encountered defendant on I-40, close to Amarillo. The interstate is a major route for narcotics trafficking. He observed defendant speeding on the highway at about 5:40 a.m. He exited his patrol car and went to the side of the vehicle. Defendant was driving. Two females were lying in the back seat area of the vehicle. Defendant presented a valid driver's license. One of the passengers, Megan Wheeler, provided the rental agreement. Christian

1

Perry had rented the vehicle, although he was not in it at the time of the stop. The permissible driver listed on the agreement was Megan Wheeler, and defendant's name did not appear on the rental agreement. The officer found it suspicious that the renter of the vehicle was not in it. Also, regarding the agreement, the only states the vehicle was suppose to be driven in were Missouri and Oklahoma. The vehicle was rented on January 26, 2004, at 4:30 in the afternoon, and he stopped them very early in the morning on the 30th in Texas. They were going to have to return to Missouri sometime that day to return the vehicle. This indicated to him that they were making a very quick trip. The officer also noticed that the vehicle had a well-lived-in look, with food and candy wrappers strewn around inside. Based on his experience, this could be indicative of criminal activity because it suggests that the travelers are driving straight through and not taking time to stop, eat, or spend the night.

Officer Schaef went to his vehicle to run the license checks for defendant, Ms. Wheeler, and Mr. Parry. The dispatcher responded to the license checks and found that the licenses were valid. A criminal history request indicated that they all had a criminal history. Regarding defendant, the dispatcher indicated that he had a positive criminal history for narcotics. Officer Schaef testified that he misunderstood and thought that Ms. Wheeler also had a positive history for narcotics, but she actually only had other charges. Mr. Parry was positive for drug charges, assault, and weapons charges. He then contacted the dispatcher and requested a backup unit because, based on his training and experience, he felt there was criminal activity going on. About ten minutes had elapsed by then.

Officer Schaef went back to the vehicle, asked defendant to exit it, and asked him to stand in the bar ditch, for safety reasons. He wanted to ask him a few more questions about his trip. The officer asked him where he was going and where he was coming from. Defendant was stuttering and nervous. He told

2

the officer that they had been to Colorado to drop off his brother at school, and then he and his girlfriend had gone to Las Vegas to do some gambling. When the officer asked what school, defendant could not say what school or even what city they traveled to. The officer explained to defendant that they had a problem with narcotics coming through on I-40, and asked him if he had any drugs, weapons, or large amounts of cash. Defendant answered no to all these items. Officer Schaef then asked if he could search the vehicle, and defendant said "yes, because he wasn't the one that rented it." [Tr. 18]. Officer Schaef told defendant to stay in the bar ditch, and he went back to the vehicle to make contact with the females. It was his impression that the women in the back were pretending to be asleep because they didn't want to talk to him. The officer first asked Ms. Wheeler where they were coming from. She said they had gone to California and dropped off defendant's brother and were on their way back. She said they had not been to Colorado, but had been to Las Vegas to do some gambling. The other passenger said she had lost her license. Later on, he identified her as Kelly Jean McClintock . He then asked the female passengers to get dressed, and advised them that defendant had given him permission to search the vehicle. While they dressed, he went to his patrol car to check on his back up, but couldn't reach him. Officer Schaef had the female passengers stand in the bar ditch. He then did a preliminary search of the vehicle to make sure there was nothing in there that would hurt or interfere with his drug dog and the search. He wanted to make sure there were no drugs or needles, and this required going through the trash. This preliminary search took about ten minutes. It took longer than usual because there was so much trash in the passenger unit He did not find anything suspicious. He was also waiting for his back-up unit to arrive because he needed help with the suspects while he concentrated on the dog and the roadways.

Officer Schaef got his narcotics detection dog out of the vehicle at about 6:10 a.m. His method

3

of working with his dog is to first let the dog take a break, and then start at the driver's side of the vehicle. On the first pass, he allows the dog to look where he wants to. On the second pass, he directs the dog, starting with the quarter panel on the driver's side. Then, he puts the dog in the trunk. At this search, the dog immediately jumped inside the car, but Officer Schaef took him out without an extensive search inside the vehicle, and put him in the trunk. As soon as the dog got in the trunk, he started breathing differently, and eventually bit on the left fender wall. In this model, the spare tire was in a compartment under the carpet. After he alerted this way, the officer placed him back in the patrol car. The entire canine search took a few minutes. Officer Schaef went back to the vehicle to conduct a more thorough search of the trunk. He removed the spare tire, which was heavier than normal, and he noticed that there was something loose inside of it. He went back and got his dog again, to make sure that this was what he had alerted on. The dog alerted to the spare tire well of the trunk and on the trunk latch. He then alerted on the tire. The officer shook the tire a few times, and eventually cut it open, locating eight bundles of crystal methamphetamine. These weighed about nine pounds.

After Officer Schaef located the drugs, he placed all the suspects under arrest. The defendant subsequently made incriminating statements to another officer. The officer also had an in-car video camera, which taped the audio portion of the stop that could be heard from inside the vehicle.

On cross examination, Officer Schaef testified that he had been working with Rex, his drug interdiction dog, for about a year. His main duties involved drug interdiction in this area. Defendant acknowledged that he was going 75 m.p.h., and said he thought that was the speed limit. He provided the officer with a driver's license, and at that point, he was truthful and helpful. The license was valid, and the rental agreement was valid and looked genuine. Ms. Wheeler produced a driver's license, and she was

cooperative. When he ran the criminal history checks, he thought they all came back positive for narcotics, but he was mistaken about Ms. Wheeler. He did not remember any of the particulars about defendant's narcotic charges, regarding the number or nature, whether they were felonies, and whether he was convicted. After getting this information, the officer called for back up and then had defendant exit his vehicle, based on his suspicion of criminal activity. At this point, he admitted that he had no inconsistent information. At the time he had defendant step out of the vehicle, he admitted that there were no warrants for his arrest, defendant had been truthful and accurate, and he had a valid driver's license. His reasonable belief of criminal activity was based on the rental agreement, the trash in the vehicle, and the narcotics charges. The officer did not tell defendant anything at the time he asked him to step into the ditch. The officer still had possession of defendant's license and the rental agreement. He talked to him for a couple of minutes about his destination and where he was coming from. Up to the point that he got out of the vehicle, the officer's report did not indicate that defendant seemed nervous. He probably talked to defendant a couple of minutes. When he asked defendant for consent to search his vehicle, he only informed him that I-40 was a high drug trafficking area. He also did not specifically ask if he could look inside open containers or cut anything open. When he conducted the interior search, he admitted that he did not locate anything. He also conducted a pat-down search of defendant, and found nothing. The same was true of the pat-down searches of the females. He did not ask either of the women about consent to search. The officer acknowledged that he never asked Ms. Wheeler if defendant had permission to drive the vehicle. After he placed defendant under arrest, he asked him some questions, and defendant refused to talk to him.

Defendant testified on his own behalf. It was his testimony that he is from Mexico. He admits he

5

was operating the vehicle, which was rented. He knew it was due back in Joplin that day, and that was their destination on the day of the stop. Ms. Wheeler was tired and asked him to drive. He understood that Ms. Wheeler was a permitted driver. He did not know the actual renter, Mr. Parry. He knew that Mr. Parry and Ms. Wheeler were friends. Ms. Wheeler is defendant's girlfriend, and his car was broken down. He thought she had rented the vehicle in her name, and did not know that someone else had actually rented it. She was renting the car because they were going to take his brother to Colorado. He never looked at the rental agreement. Until the time they were pulled over, he did not know that Ms. Wheeler had not rented the car.

Initially, the Court must address the matter of standing in this case. Defendant contends that he has standing to bring this motion because he was the driver of the vehicle and had a reasonable expectation of privacy in the interior contents of the rental car. According to the government, defendant lacks standing because he was not the owner of the vehicle, he was not a party to the rental contract, and he was not listed within the contract as a permissive owner of the vehicle. Additionally, the government contends that there is no indication that defendant had received express permission to operate and exercise control over the vehicle by the owner or the contracted permissive user of the vehicle. Therefore, it is asserted that, even assuming that defendant had a subjective expectation of privacy by virtue of his status as the operator of the vehicle, it can be concluded that any such expectation of privacy is not objectively reasonable.

The law provides that an individual challenging a search and seizure can establish a sufficient interest to constitute standing "if he has an adequate possessory or proprietary interest in the place or object searched" and if this assertion of a property interest is supported by an expectation of privacy. See <u>United States v. Kelly</u>, 529 F.2d 1365, 1369 (8th Cir. 1976). To establish a legitimate expectation of privacy,

6

it must be demonstrated that the defendant had a subjective expectation of privacy, which is one that society would recognize as being objectively reasonable. United States v. Muhammad, 58 F.3d 353, 355 (8th Cir. 1995), citing United States v. Stallings, 28 F.3d 58, 60 (8th Cir. 1994). The Eighth Circuit addressed, in Muhammad, the question of standing in the context of a rented vehicle, where the operator is not the renter or permitted driver on the rental contract. 58 F.3d at 355. The Court emphasized that a "defendant must present some evidence of consent or permission from the lawful owner/renter to give rise to an objectively reasonable expectation of privacy." Id. In the case of Muhammad, he presented no direct evidence that the renter, who was the only authorized driver on the rental agreement, had granted him permission to use the vehicle. Additionally, the Court noted that, at the suppression hearing, defendant did not call the renter as a witness, and did not even claim that she had authorized him to use the car. The Court held that the defendant lacked standing to challenge the search of the vehicle where he failed to make an "affirmative showing of consensual possession to satisfy the standing requirements." Id. In doing so, the Court noted that defendant failed to present evidence of direct authority to use the vehicle and failed to demonstrate that he an intimate relationship with the car's owner.

In this case, defendant testified that Ms. Wheeler asked him to drive the rental car because she was tired. He also stated that she was his girlfriend, and that he believed she had rented the vehicle. He testified that he wanted to take his brother to Colorado, and that his car was broken down. He had not looked at the rental agreement, but he stated that he knew that she was a permitted driver. Defendant testified that he did not know that Mr. Parry had rented the vehicle, but that he knew that Mr. Parry was a friend of Ms. Wheeler's. The evidence otherwise adduced at the hearing established that Ms. Wheeler was only listed as a permitted driver on the rental agreement, and that the vehicle was rented by Christian

7

Parry, who was not even in the vehicle at the time of the stop.

Based on a full review of the evidence, the Court finds that defendant lacks standing to contest the search. He did claim a close relationship with Ms. Wheeler, and he did testify that she gave him permission to drive the vehicle. There was, however, no connection established between defendant and Mr. Parry, who actually rented the vehicle and who was not present in it at the time of the search. Given that Ms. Wheeler was merely a permitted driver on the rental agreement, and not a party to it, the Court believes that defendant's assertion of an expectation of privacy is not objectively reasonable.

Even if the Court were to find, however, that defendant has standing to challenge the search and seizure in this case, it would nevertheless recommend that the motion to suppress be denied. The evidence clearly indicates that there was a legitimate Terry stop, based on defendant's own admission to Officer Schaef that he was speeding. Law enforcement officers are entitled to stop and briefly detain an individual for investigative purposes if there is reasonable suspicion that criminal activity may be afoot. Terry v. Ohio, 392 U.S. 1, 27 (1968); United States v. Bloomfield, 40 F.3d 910, 916 (8th Cir. 1994)(en banc), cert. denied, 514 U.S. 1113 (1995). This suspicion must be more than just an "unparticularized suspicion or 'hunch.'" Terry, 392 U.S. at 27. An investigative stop is constitutional if law enforcement officers have a reasonable suspicion "that the person stopped is, or is about to be, engaged in criminal activity." United States v. Gonzales, 220 F.3d 922, 925 (8th Cir. 2000) (citation omitted). In evaluating the validity of a stop, the Court must consider "'the totality of circumstances--the whole picture.' " United States v. Sokolow, 490 U.S. 1, 8 (1989) (quoting United States v. Cortez, 449 U.S. 411, 417 (1981)); U.S. v. Mora-Higuera 269 F.3d 905, 910 (8th Cir. 2001).

Regarding the scope of the investigative stop, the Court finds that based on the credible evidence

adduced at the hearing, it did not exceed the limits of a legitimate Terry stop. The officer observed the rental agreement without defendant's name as a permitted driver. The renter of the vehicle was not in it. He noted that the vehicle was only suppose to be driven in Missouri and Oklahoma, and he had stopped it in Texas. The vehicle was due back in Missouri that day, so he concluded that the suspects were going to have to make a fast trip to get it back on time. The location of the stop was an area of high narcotics trafficking and it was early in the morning. When he ran the license checks, he discovered that defendant had a criminal history of narcotics charges. Ms. Wheeler also had criminal charges, and the renter, Mr. Parry had a criminal history for narcotics charges. The officer also observed a lot of food and candy wrappers in the car, which indicated to him that the occupants were not stopping to eat as they drove. At this point, the officer became more suspicious that criminal activity might be occurring. After conducting brief questioning of defendant and the passengers, the officer received conflicting stories regarding where they had been. He also observed defendant to be stuttering and nervous. Based on his training and experience, his suspicions were increasing regarding criminal activity. There is no basis to conclude that the questioning was unreasonable in length, nor that asking defendant to stand in the bar ditch for safety reasons was unreasonable.

The Court finds that, based on the totality of the circumstances, the officer's decision to call for back up and use his drug detection dog to search the vehicle for narcotics was objectively reasonable. Additionally, there is nothing before the Court to suggest that defendant's consent was not voluntarily given. He did not deny that he gave consent, and there was no evidence adduced at the hearing to suggest that the officer acted in any manner that would suggest duress or coercion. It cannot be said that the scope of the search, to include the trunk, was not reasonable. Once the officer detected the suspicious nature of

9

the spare tire, based on his observations that it was unusually heavy and something loose was inside, it is clear that he had probable cause to expand the search to the inside of the tire to search for contraband. Accordingly, the Court finds that it must be recommended that the motion to suppress be denied.

For the foregoing reasons, it is, pursuant to the governing law and in accordance with Local Rule 72.1 of the United States District Court for the Western District of Missouri,

RECOMMENDED that defendant's Motion to Suppress Evidence be denied.

     /s/ James C. England
JAMES C. ENGLAND
United States Magistrate Judge

Date:  4/14/05