IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 04-05033-03-CR-SW-ODS |
| ) | |
| VICTOR GOMEZ-CORONADO, ) | |
| ) | |
| Defendant. ) | |

**ORDER AND OPINION ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S MOTION TO SUPPRESS**

On April 14, 2005, the Honorable James C. England, United States Magistrate Judge for the Western District of Missouri, issued his Report and Recommendation ("Report") recommending that Defendant's Motion to Suppress be denied. Defendant filed objections. The Court has conducted a de novo review of the record and, having done so, agrees the Motion to Suppress should be denied.

On January 30, 2004, Defendant was driving a rented vehicle near Wildorado, Texas, when he was stopped at 5:40 a.m. for speeding. Two women were lying in the back seat, and one of them (Megan Wheeler) produced the rental agreement. The agreement indicates the car was rented by Christian Parry, but Parry was not in the car. Wheeler was listed as an authorized driver but not as the renter. Defendant was not listed on the agreement at all. The agreement also indicated the car was to be driven only in Missouri and Oklahoma and was due to be returned in Joplin, Missouri, that same day.[1] The officer knew the highway was frequented by drug traffickers (because it extended from the West Coast to the East Coast), and observed the car had a "lived-in" look, with food and candy wrappers strewn about. The officer testified this was an

---

[1] Wildorado is approximately twenty miles west of Amarillo, Texas, and is approximately 500 miles from Joplin.

indicator of criminal activity because it demonstrates the occupants are "not taking time to stop and eat or, you know, spend the night somewhere. So the trash tends to build up in the vehicle." Tr. at 10.

The officer ran license checks on Defendant, Wheeler, and Parry, and discovered all three licenses were valid and that all three individuals had a criminal history. Defendant and Parry had drug-related convictions; the officer mistakenly believed the dispatcher indicated Wheeler also had drug-related convictions, but in reality her convictions were not related to narcotics. Parry also had been charged with assault and weapons violations. The officer called for a backup unit; by that time, ten minutes had elapsed since the initial stop.

While waiting for backup, the officer directed Defendant to exit the car and asked him where the trio was going and where he came from. Defendant appeared nervous as he explained they had traveled to Colorado to drop off his brother at school and continued to Las Vegas. However, Defendant could not name the school or the city in which it was located. The officer requested and obtained permission to search the car. The officer then asked the women to exit the car, and asked Wheeler about their itinerary. She related they had gone to California to drop off Defendant's brother and continued on to Las Vegas. The backup still had not arrived, but the officer nonetheless commenced searching the trash in the car to insure there were no drugs, needles, or other objects that might harm his dog. Due to the volume of trash, this process lasted approximately ten minutes. He brought out his drug detection dog at approximately 6:10 a.m.. The search with the dog lasted a few minutes; the dog alerted on the spare tire, and nine pounds of crystal methamphetamine was found inside. All three occupants of the car were placed under arrested and advised of their rights. Defendant made incriminating statements following his arrest. Defendant filed a Motion to Suppress, arguing the length of the stop was not justified by its original purpose and that his consent to search was made while he was effectively under arrest. The Court disagrees.

2

The Magistrate Judge initially examined the issue of Defendant's standing. The Court agrees with the legal conclusion that Defendant lacked an expectation of privacy in the rental car because he was not the person who rented it and did not have permission from the lawful renter. Cf. United States v. Muhammad, 58 F.3d 353, 355 (8th Cir. 1995); United States v. Gomez, 16 F.3d 254, 256 (8th Cir. 1994). He may have had permission from an authorized driver (Wheeler), but Wheeler did not have authority to allow other people to drive the car. Defendant's status is comparable to that of a passenger, and passengers do not have an expectation of privacy with regard to the automobile that is protectable by the Fourth Amendment. Cf. United States v. Barragan, 379 F.3d 524, 529-30 (8th Cir. 2004).

This inquiry does not address Defendant's arguments regarding the length of the detention, but the Court concludes the officer's actions did not violate the Fourth Amendment.[2] Having observed the car exceeding the speed limit, the officer was entitled to stop the car. During a stop, an officer does not violate the Constitution by asking the driver his destination, asking for identification, or seeking confirmation from passengers. United States v. Linkous, 285 F.3d 716, 719-20 (8th Cir. 2002). Information gleaned during the course of this questioning may give rise to suspicion that justifies further investigation. Id. at 720. In this case, within ten minutes of the initial stop, the officer knew the car was rented by a person not in the car who had prior drug-related charges, was being driven by someone who was not authorized to drive the car and who had prior drug-related charges, was being driven in a state that was not authorized by the rental agreement, and was traveling on a road known to be used for drug trafficking.[3] The

---

[2]This additional analysis would validate the search even if Defendant had standing under the Fourth Amendment.

[3]The officer also knew the interior of the car was strewn with trash; however, the Eighth Circuit has cautioned this factor is too commonly associated with innocent activity to be a useful factor in determining whether suspicion of criminal activity is reasonable. E.g., United States v. Beck, 140 F.3d 1129, 1138-39 (8th Cir. 1998). However, the officer's actions were reasonable even if this factor were disregarded.

3

officer then asked additional routine questions, and found Defendant's answers suspicious in that he could not recall where he allegedly took his brother to school. At this point, the length of the detention was still reasonable under the circumstances. The officer then requested and obtained consent to search the car, and it must be remembered that the request did not need to be supported by any level of suspicion so long as coercive means were not used (and there is no indication coercive means were used to gain Defendant's consent). See United States v. Yang, 345 F.3d 650, 654 (8th Cir. 2003). Additional questioning of the passengers uncovered conflicting accounts of the travelers' itinerary. At this point, the length of the detention was still reasonable under the circumstances, and in any event the officer had obtained consent to search the car. This was done in a reasonable time given the circumstances (such as the need to clear away the trash and the desire to wait for backup to insure officer safety).

    The Court concludes the officer's actions did not violate the Fourth Amendment, so Defendant's objections to the Report are overruled and the Motion to Suppress is denied.

IT IS SO ORDERED.

DATE: May 31, 2005

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT